## CASLER et al. v. SOUTHWEST NAT. BANK OF DALLAS.    (No. 3066.)

(Court of Civil Appeals of Texas. Texarkana. June 9, 1925. Rehearing Denied July 2, 1925.)

1. **Trial ⬤⟿25(13) Defendants admitting good cause of action on plaintiff's part except as defeated by defense of offset or counterclaim, to which supplemental pleadings exclusively related, held entitled to open and close.**

Where defendants admitted that plaintiffs had good cause of action except as to set-off or counterclaim pleaded by defendant, and supplemental pleadings related exclusively to such counterclaim, held that, under Rev. St. art. 1951, and rule 31, defendants were entitled to open and close in the argument, and refusal to allow them that privilege was reversible error.

2. **Evidence ⬤⟿552—Admission of answer to hypothetical question of no value as an opinion held error.**

Admission of testimony of witness in answer to hypothetical question, that he would have delivered bonds to C. had he been called on to do so, held error, where it was of no value as opinion of witness regarding C.'s authority as an agent.

Appeal from District Court, Dallas County; Lewis Wilson, Judge.

Action by the Southwest National Bank of Dallas against J. C. Casler and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded for new trial.

Seay, Seay, Malone & Lipscomb and Thompson, Knight, Baker & Harris, all of Dallas, for appellants.

Leake, Henry, Wozencraft &, Frank, of Dallas, for appellee.

HODGES, J. The Southwest National Bank of Dallas filed this suit against the appellants J. C. Casler, Frank E. Austin, Harry L. Seay, Clarence Linz, and Elihu A. Sanger, to recover the sum of $50,000 due on a promissory note dated February 28, 1921. The pleadings consisted of the plaintiff's original petition, the defendants' amended original answer, and plaintiff's first and second supplemental petitions.

The following is a history of the transactions which culminated in the suit: In December, 1913, the appellants Casler, Austin, Seay, Sanger, and Linz purchased from Dallas Automatic Telephone Company 1,000 shares of its preferred stock. To pay for that stock the five appellants borrowed $80,000 from the Guaranty State Bank & Trust Company, the predecessor of Security National Bank of Dallas. The latter became, in the course of time, the legal predecessor of the appellee Southwest National Bank of Dallas. Dallas Automatic Telephone Company issued stock representing the 1,000 shares in five certificates of 200 shares each. These certificates were issued to the appellants separately—that is, one certificate of 200 shares to each of them. All of that stock was delivered to the Guaranty State Bank & Trust Company, and held by it as collateral security for the payment of the $80,000 note. The original note, dated December 26, 1913, was renewed from time to time, and finally reduced by payments to $50,000. Casler was the president of the Dallas Automatic Telephone Company, and Linz its vice president; and all the appellants were members of the board of directors. In 1918 there was a merger of the properties of the Dallas Automatic Telephone Company with the local exchange of the Southwestern Telegraph & Telephone Company, and a new company organized known as the Dallas Telephone Company. Under the arrangements then made the preferred stock of the Dallas Automatic Telephone Company was to be retired by the issuance in its place of bonds and common stock of the new telephone company, on the basis of $80 a bond and $40 of common stock for each share of preferred stock of the original company. After the merger the property of the old companies was conveyed to the new company. The Security National Bank of Dallas became the

transfer agent for the purpose of perfecting the exchange, and did make all the transfers. It required, however, that the stockholders execute powers of attorney to the bank, authorizing it to make the exchange and to account for the new stock. Each of the appellants owned shares of preferred stock in the Dallas Automatic Telephone Company in addition to the 200-share certificates deposited as collateral for their note. The matter of seeing to the transfer of the extra shares was intrusted to J. C. Casler, but the transfer of the 200-share certificates, which were held as collateral for the balance due on the note, was separately handled by the respective owners. Each of them gave to the Security National Bank a power of attorney signed by him individually.

In defense of this suit the appellants pleaded payment, offset, and counterclaim. It was alleged that the stock and bonds referred to were placed with the bank as collateral security for the note, and that these certificates or bonds had been lost through the negligence of the plaintiff bank or one of its predecessors, or had been converted, and that defendants were entitled to recover damages equal to the par value of the securities. They prayed that such damages be offset against the amount claimed as due on the note.

The plaintiff pleaded in reply a denial of the loss of conversion of the bonds, and alleged, in substance, that the appellants were partners in the transaction, and that the bonds received in exchange for the original certificates of stock had been delivered to Casler and Linz, the authorized agents of the other defendants.

Before the trial commenced the appellants filed a statement under Rule 31, in which it was admitted that the plaintiff had a good cause of action as set forth in its original petition, except in so far as it might be defeated by the defensive matter pleaded. They thereupon demanded the right to open and close in the introduction of evidence and in the argument of the case. This request was refused by the court, and that ruling is the first assigned error.

[1] The plaintiff's suit was merely an action on a promissory note for the principal, interest, and attorneys' fees, and the entire cause of action was fully stated in its original petition. The defense pleaded was an offset, or counterclaim, based upon the alleged loss or conversion of the bonds which had been deposited with the bank as collateral security. The supplemental pleadings related exclusively to that defense, and did not in any manner enlarge or modify the cause of action as stated in the original petition. If after the filing of that admission by the appellants no evidence had been presented by either party, clearly the plaintiff in the suit would have been entitled to a

judgment for the full amount sued for. Under such conditions the defendants were required to begin the introduction ' of testimony in order to establish any defense, and logically were entitled to open and close in the argument. The refusal of the court to allow them that privilege was a reversible error. Blume v. Haney, 60 Tex. Civ. App. 351, 128 S. W. 440; Joy v. Insurance Co., 32 Tex. Civ. App. 433, 74 S. W. 822; Berry v. Joiner, 45 Tex. Civ. App. 461, 101 S. W. 289; Meade v. Logan (Tex. Civ. App.) 110 S. 'W. 188; Stone v. Pettus, 47 Tex. Civ. App. 14, 103 S. W. 413.

"The burden of proof on the whole case," as used in article 1951 of the statute, fixing the order of the procedure, means the burden resting upon the plaintiff to establish the facts upon which the cause of action is based. To hold that the defendant must also admit the truth of the plaintiff's reply to an affirmative defense would render the privilege provided for in rule 31 practically useless. If the truth of all the facts stated by the plaintiff, both in his original petition and in his replication, were admitted, there would be nothing for the court to do, in any case, except to render a judgment for the plaintiff upon the pleadings.

This case was submitted by the trial court on special issues, in response to which the jury found, substantially, that the stock and bonds referred to had been deposited as collateral security for the note held against the appellants, that the bank had delivered to Sanger the bonds belonging to him, and to Casler all of the other bonds. The jury also found that the appellants were partners, and that Casler was their authorized agent clothed with power to receive the bonds at the time they were delivered to him. Those issues were sharply contested upon the trial. Casler and Sanger each denied receiving any of the bonds, while witnesses for the appellee testified to the contrary. Appellants contend that the findings of the jury on the issues of agency and partnership were not supported by the testimony. Since the case is to be remanded for another trial, the sufficiency of the testimony upon those questions will not be discussed.

[2] We are of the opinion that the court erroneously permitted the witness Waggoner to testify that he would have delivered the bonds to Casler had he, witness, been called upon to do so. The question was a hypothetical one, and the answer was of no value in this controversy as an opinion of the witness regarding Casler's authority as an agent.

The remaining assignments of error are overruled.

For the reasons stated, the judgment will be reversed and the cause remanded for a new trial.